UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| WAYNE RICHARD SMITH, JR. | Civil Action No.: 17-13104<br>Honorable Victoria A. Roberts<br>Magistrate Judge Elizabeth A. Stafford |
| Plaintiff | |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 12, 15]

Plaintiff Charles Smith appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied his application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence and thus **RECOMMENDS** that:

- Smith's motion [ECF No. 12] be **DENIED**;

- the Commissioner's motion [ECF No. 15] be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

I.  **BACKGROUND**

   A.   **Smith's Background and Disability Applications**

Born September 28, 1953, Smith was 61 years old on July 24, 2014, the date of application. [ECF No. 8-5, Tr. 127]. He has past relevant work as a truck driver for a moving company. [ECF No. 8-6, Tr. 146]. Smith claimed disability due to problems with his shoulders and seizures. [*Id.*, Tr. 145].

After a hearing on May 20, 2016 during which Smith and a vocational expert (VE) testified, the ALJ found that Smith was not disabled. [ECF No. 8-2, Tr. 31-49]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 1-3]. Smith timely filed for judicial review. [ECF No. 1].

   B.   **The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 920(c).

Applying this framework, the ALJ concluded that Smith was not disabled. At the first step, he found that Smith had not engaged in substantial gainful activity since June 20, 2014, the alleged onset date. [ECF No. 8-2, Tr. 12]. At the second step, he found that Smith had the severe impairments of "degenerative changes of the bilateral shoulders with history of remote shoulder surgery and history of seizures." [*Id.*]. Next, the ALJ concluded that none of Smith's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 13].

Between the third and fourth steps, the ALJ found that Smith had the RFC to perform medium work[2] "with no exposure to moving machinery or unprotected height; and no driving requirements." [*Id.*, Tr. 13]. At step four, the ALJ found that Smith was unable to perform past relevant work. [*Id.*, Tr. 15]. At the final step, after considering Smith's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that there were jobs that existed in significant numbers that Smith could perform, including positions as an assembler, inspector, and packer,

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c).

4

rendering a finding that he was not disabled.  [*Id.*, Tr. 16-17].

## II.   ANALYSIS

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Smith, who is proceeding *pro se*, asserts that the ALJ failed to properly assess his RFC, posit appropriate hypotheticals to the VE, and inadequately assessed his credibility.  [ECF No. 12].  The Commissioner responds that the ALJ's conclusions are supported by substantial evidence. [ECF No. 15].  As Smith is proceeding *pro se*, the Court will limit its consideration to those matters arguably presented by his motion and a consideration of the administrative record for any obvious errors in the

5

ALJ's conclusions. *See Brinkley v. Comm'r of Soc. Sec.*, No. 14-13560, 2015 WL 1637598, at *2-3 (E.D. Mich. Apr. 13, 2015) (where Plaintiff is *pro se*, the Court may "review[ ] the administrative record for obvious errors in order to affirm the Commissioner's conclusions...." (internal citations and quotations omitted)).

**A.**

Smith argues that the ALJ "failed to adequately assess or evaluate [Smith's] credibility," and that he did not comply with SSR 96-7p by failing to consider Smith's inability to afford treatment. [ECF No. 12, PageID.329], *see* SSR 96-7p, 1996 WL 374186, *8. But the ALJ made no finding as to Smith's credibility. Instead, after describing Smith's testimony, the ALJ stated that "the evidence supports the above-specified limitations." [ECF No. 8-2, Tr. 14]. As of March 28, 2016, ALJ's were no longer tasked with assessing a claimant's credibility, as SSR 96-7p was superseded by SSR 16-3p, which eliminates use of the term "credibility" from official policy and clarifies that a "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, at *1. *See also Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017), *adopted*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018) (noting that under SSR 16-3p, "an ALJ must focus on the

6

consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility.").

Despite the linguistic clarification, courts continue to rely on pre-SSR 16-3p authority providing that the ALJ's credibility determinations are given great weight. *See, e.g., Kilburn v. Comm'r of Soc. Sec.,* No. 1:17-CV-603, 2018 WL 4693951, at *7 (S.D. Ohio Sept. 29, 2018); *Duty v. Comm'r of Soc. Sec.*, No. 2:17-CV-445, 2018 WL 4442595, at *6 (S.D. Ohio Sept. 18, 2018). Thus, an ALJ's subjective symptom evaluation should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241.

At the hearing, Smith testified that his seizure medication, Keppra, made him drowsy, causing him to take naps and drive only when he must. [ECF No. 8-2, Tr. 39]. He stated that he has had four or five partial seizures since he started the Keppra and that the partial seizures, combined with the drowsiness and shoulder pain, prevents him from driving. [*Id.*, Tr. 40]. Taking Smith's seizures and drowsiness into account, the ALJ limited him to no exposure to moving machinery or unprotected heights and no driving requirements. [*Id.*, Tr. 13].

While Smith alleged to have suffered a seizure on his alleged onset date of June 20, 2014, his CT scan on June 22nd was normal with no acute intracranial process. [ECF No. 8-7, Tr. 255]. An EEG later that month was abnormal due to bilateral "generalized dysrhythmic activity," but showed a lack of paroxysmal activity, and an MRI the following month was unremarkable except for a moderate degree of paranasal sinus disease. [*Id.*, Tr. 250-52]. Another EEG in late July was entirely normal. [*Id.*, Tr. 247]. On July 17, 2014, Smith saw by Bruce M. Silverman, D.O., who recommended no driving for six months post seizure, avoiding standing in unprotected heights like ladders or roofs, and avoiding working with heavy equipment, restrictions reflective of those in the RFC. [*Id.*, Tr. 212-13].

In September 2014, Smith was seen by Bruce M. Silverman, D.O., who noted that Smith had had no further seizures and that "[t]he origin of his complaints continues to be of question." [*Id.*, Tr. 239]. On neurological examination, all of Smith's results were normal and intact, and he was alert and oriented in all areas "with no impairment of recent or remote memory." [*Id.*]. He received an MR angiography of the brain that month as well, which was normal and unremarkable. [*Id.*, Tr. 291]. In October 2014 he had another MRI which showed no significant intracranial abnormality, pathologic enhancement, or significant change from the prior MRI. [*Id.*, Tr.

8

287]. Smith saw Dr. Silverman again that month and reported no further seizures and tolerance of his Keppra medication "without difficulty." [*Id.*, Tr. 281]. Neurologic examination was once again normal. [*Id.*, Tr. 282].

Smith continued to have normal results on examination in December 2014 and May 2015 visits. [*Id.*, Tr. 273-74, 277-78]. But in July 2015 he reported to Dr. Silverman that he had "experienced what he believes to be perhaps a seizure," that "he forgot to wear his CPAP device" and that he "had forgotten to take his Keppra for a time and has decided to remain off of it." [*Id.*, Tr. 266]. He once again tested normal upon examination, and Dr. Silverman recommended using his CPAP device appropriately and reinitiating the Keppra. [*Id.*, Tr. 267].

As to Smith's shoulder impairments, the ALJ noted that while Smith complained of progressively worsening pain, x-rays showed only mild degenerative changes and his recommended treatments were conservative in nature, consisting of an independent home exercise program and pain medication. [ECF No. 8-2, Tr. 14, citing ECF No. 8-6, Tr. 165-70 and ECF No. 8-7, Tr. 182-83, 232]. Smith also had normal 5/5 strength and 2/2 reflexes upon examination by Dr. Silverman in every instance. [ECF No. 8-7, Tr. 267, 274, 278, 282].

Given Smith's consistently normal and mild results, his arguments concerning the ALJ's credibility determination and RFC are unavailing. He is correct that his inability to afford further treatment is a possible factor in the ALJ's analysis of the "frequency or extent of the treatment sought," but it is only one of several factors, and he fails to point to any record or testimony that would put the ALJ on notice of this claim. SSR 16-3p, 2016 WL 1119029, at *8-9. The ALJ stated that his testimony regarding his inability to negotiate hazards and drive due to seizures, drowsiness, and shoulder pain was credited and incorporated into the RFC. [ECF No. 8-2, Tr. 14]. Smith bears the burden of demonstrating the need for a more restrictive RFC, even if his credibility were improperly assessed. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). He does not meet this burden.

Smith also argues that the hypothetical question posed to the VE was improper in that it did not reference "drowsiness to medication and the effects of severe shoulder pain on lack of sleep resulting in depression and lack of attention, concentration, pace, and handle [*sic*] stress." [ECF No. 12, PageID.329]. But the hypothetical was identical to the RFC in the ALJ's decision; it reflected a claimant who could do medium work, restricted to jobs not involving driving, and no working around moving machinery or

10

unprotected heights. [ECF No. 8-2, Tr. 46-47]. Thus, Smith's challenge of the hypothetical is a collateral attack on the RFC itself. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."); *Kirchner v. Colvin*, No. 12-CV-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013)(Plaintiff's step five argument is a "veiled attack" on the RFC when the hypothetical is identical to the RFC assessment). Thus, Smith retains the burden to show that the RFC should have included additional limitations—a burden he has failed to meet. *Kirchner*, 2013 WL 5913972, at *11; *Jordan*, 548 F.3d at 423.

## B.

Smith argues that the ALJ "failed to take into consideration [his] obesity and its effects on [his RFC]." [ECF No. 12, PageID.329]. As Smith declined to cite any examples of obesity or related impairments within the record, this argument could be considered waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to

11

mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."), *United States v. Dado*, 2016 WL 4698782, at *3 (applying waiver to *pro se* litigant).

The Commissioner notes that there is at least one record reflecting Smith's obesity, [ECF No. 8-7, Tr. 212], but that the record contains no functional limitation related to obesity, and that this record was explicitly considered in the opinion of B. D. Choi, M.D., who noted Smith's weight at that time of 266 pounds but found no additional restrictions related to obesity to be appropriate. [ECF No. 8-3, Tr. 54, 56-57]. The ALJ considered and gave partial weight to Dr. Choi's opinion. *See Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006) ("[T]he ALJ does not need to make specific mention of obesity if he credits an expert's report that considers obesity."). The only potentially obesity-related impairment prevalent in the record is Smith's sleep apnea, which was explicitly acknowledged by the ALJ as a non-severe impairment as the record reflects it is controlled when Smith complies with treatment. [ECF No. 8-2, Tr. 12]. This is reflected in his tolerance of the CPAP machine in the record as well as his increased symptomology with noncompliance. [ECF No. 8-7, Tr. 267, 281]. Smith has identified no error with the ALJ's treatment of his obesity, nor can he show that such error would not be harmless, as he fails

12

to identify additional restrictions that would apply were his obesity explicitly considered.

Lastly, Smith argues that his "ability to engage in activity in a non-working setting is not the equivalent of performing in a work setting on an eight hour a day and five day a week basis." [ECF No. 12, PageID.329]. But the ALJ's decision does not include a discussion of Smith's activities of daily living, rendering this argument inapposite. Considering all of Smith's challenges to the ALJ's decision, the Court finds no error relating to those challenges and no obvious error on any other grounds, and thus recommends that the decision be affirmed.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Smith's motion [ECF No. 12] be **DENIED**; that the Commissioner's motion [ECF No. 15] be **GRANTED**; and that the ALJ's decision be **AFFIRMED.**

                              s/Elizabeth A. Stafford
                              ELIZABETH A. STAFFORD
Dated: November 30, 2018     United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 30, 2018.

                                                s/Marlena Williams
                                                MARLENA WILLIAMS
                                                Case Manager